Good morning. May it please the court, Christopher Black appearing on behalf of appellant Anh Nguyen. Ms. Nguyen set forth three errors in her brief which we believe undermine the validity of the conviction in this case and call for reversal. We believe that each error independently warrants reversal but particularly in conjunction. These errors are that the district court permitted the jury to convict Ms. Nguyen of something that was not charged in the district court delegated its duty to instruct the jury on the law to a government witness and that the snap or food stamp regulations that Ms. Nguyen was convicted of violating were unconstitutionally vague as applied to her conduct. I plan to focus most of my remarks on the first issue. As to that issue the record shows that Ms. Nguyen was convicted of something different than what she was charged with. The indictment set forth both wire fraud counts as well as snap fraud counts. The wire fraud counts alleged a scheme that consisted of Ms. Nguyen steering people to commercial establishments that would quote accept the cards for cash instead of eligible food. Also the indictment contained a charge of misrepresentation which is that the benefits were being used to quote purchase eligible food items. As to the snap fraud counts they charged that Ms. Nguyen was violating the snap regulations by presenting benefits that were quote not used to purchase eligible food. The common element of all these charges is that they all revolved around whether or not food was purchased with the snap benefits. I was trial counsel in this case and I prepared accordingly to defend against the charges in the indictment. The planned defense was to show that the government couldn't meet its burden of showing that food was not purchased with those snap benefits. You're saying the indictment charges it was a straight exchange of the you know cash right it was only cash. Are you saying the indictment right charge the way the way the indictment is worded it wouldn't sustain a charge for where the buying of food was involved whether by you know somebody who was not authorized or whether it was so cheap or for any other reason it doesn't it's not possible to to to convict of a crime involving the sale of food is that what you're saying? I'm trying to understand your theory. I I would I would submit that the indictment as worded would prohibit conviction under the facts of this case whether there might be some way around the the scenario that that your honor suggests I don't know I can't think of one it the the indictment is very clear that cash was exchanged for benefits from the stores and that food was not purchased. All right yeah there was another government theory throughout essentially the there was no purchase of food this was a situation where there were some various steps but the point was to get cash for food stamps. That is what the government that's that's that's what the government argues but that is not what the record reveals. Okay why not? The government did not prove that food was not purchased during the transactions in the store the record does tend to show if anything that food was purchased the the none of the government agents were ever inside the store during the transactions where the. Okay for instance why don't you go through step-by-step one of these one of these transactions with an undercover agent right? Yes. And your client and what the record shows as to as to what happens step-by-step and involving the purchase of food. Essentially. First of all she would meet somebody outside the store right? Correct. All right and then what? She would get the card. Yeah. She would go into the store a transaction would occur inside the store. What's a transaction buying food? Well. Or we don't know. The we know for sure that the card was run through the food stamp machine inside the store. If it wasn't run you wouldn't have a crime right? Yeah. Well you might you might have an attempt but you wouldn't have you know. So it was run and does the record show whether she got cash or food or both or what? The record does not show that she did not get food in any in any of the the charged transactions. But it shows it shows she walked out and gave the undercover agent money right? It does well it shows that the undercover agents eventually got money. Right. It doesn't show where that money came from. Well it didn't come from her? It did come from her but it didn't. You mean it's not physically traced as coming from the store to her to directly? Is that what you're saying? Physically or in any way. It's there's no there was no evidence offered that money came from the store. This is charity they gave her. Or she found it on the floor. And she decided to give it to them. Where does the food come in in that transaction? The the there were for some of the transactions no no witnesses testified as to what happened inside the store. There were transactions where there were witnesses inside the store and where evidence was offered about what happened inside. And during those transactions the evidence tended to show that food was purchased. And where are you referring to in the record on that counsel? That would be during officer Wynn's testimony. The he which would be at page 132 to 159 of the record. 32 to 159 and you're saying that his testimony was that she purchased food with the stamp? I mean with the card? Well I should be more. That's an awful lot of pages. It was 132 to 159. I'm sorry. All right okay that's a lot of pages. I'm sorry I can't I can't point more specifically. But your officer testified that Ms. Wynn used the card to buy food. Let me let me clarify as to exactly what I'm saying. That's not what I read. So no the officer the all of the evidence introduced during the officer's testimony tends to show that food was purchased. And I should wait wait wait wait tends to show what are you talking about? I'm sorry I'm trying to get there. What what the exact evidence was was the recordings of the transactions that occurred while officer Wynn was in the store. Those were introduced during his testimony. The recordings you mean the recordings from the store that showed her running through and you're saying that there were groceries or something that came The audio recordings reveal that she ordered food. Yeah I mean there's a discussion of purchasing food. There are two or three items I mean almost like bulk items two or three right several items. Is that what you're talking about? Yes there's beef and fish and shrimp. In big quantities? Yes. I mean more than you would eat at a meal. Yes. All right. But did she walk out with the food? Oh yeah. Did she walk out with the showing her leaving the store with the food not necessarily at the exact same time as the purchase. The video clips were introduced showing Ms. Wynn leaving the stores with food but again they weren't necessarily in conjunction with. So was there any in conjunction with this and we're talking about was there any evidence that she actually walked out with the food? No evidence was introduced that she walked out with the food. But there was. And it's not otherwise tied to any specific transaction is it? The evidence of walking out with the food. It's not tied to a specific transaction no. All right now. A specific charges transaction. I should clarify. But she does go out and give money. Yeah right that was my next question. For every transaction charge or at least you know where there was a guilty verdict there is evidence that money changed hands. In other words that the the snap card holder received money. That is correct. The evidence does show that. And I'd like to reserve. But if that's I mean if the jury could infer right that the money received by the snap card holder came from the store and and your case is that well she purchased food with it then she she sort of she sort of got twice as much as she should have for the food. Isn't that what I mean for the card? Isn't that what it amounts to? She got paid twice. Is that is that what is that your case? No. Well otherwise it doesn't make sense does it? Well what what the evidence how the evidence reads as far as as we're concerned is that food was purchased during the transactions then Ms. Wynn paid the card holders for that food. Okay. She they lend him they lend her their card she goes to the store buys food and then she comes back after she leaves the store and pays them for the food. That's correct. But isn't that contradictory to at least what I understood the evidence to be was that her deal was give me your snap card I'll go get some cash and I'll give you half the value of what you have on this snap card in cash. That was the deal wasn't it? Well that was what happened. Okay. And in every instance that the government presented evidence of a transaction that's what happened right? Nobody disputes that. That cash went to the snap card holder. Half the amount of the value of the snap card at that time. Correct. Now that was not. So so you're suggesting that even though that happened that the jury is not entitled to infer because of these pictures that you say of her purchasing food that somehow she went into the store magically came out with cash still had food for it and that somehow the defrauded. Is that what you're asking us to infer? I'm asking that the court recognize that no evidence was produced showing that food wasn't purchased or that cash came from the stores. Let me ask another. I know you're over time but chief will permit this so before I forget. Now if your theory is correct in other words that when she got the food she bought the food for the snap card holder and then the snap card holder sold it to her and she gave him cash then for that right? That's what you're saying? Yes your honor. Okay now if that's true that could still be a crime under the snap regulations right because you can buy food only for yourself for the card holders family but you agree with that right? Or at least you agree with that that's a possibility. It's a possibility. All right but your case would be that that crime wasn't charged in the indictment. Is that right that kind of crime? That is correct your honor. So so you weren't prepared to defend against that? Well that's part of your case I mean it was not charged. That's very much part of the case that the each of the counts in the indictment had a requirement that or had a condition that food wasn't actually purchased. You could have asked for a bill of particulars sooner right? I did ask there was a bill of particulars. You could have asked for it weeks earlier than that or months earlier than that right? Well you could have asked for continuance afterwards. The relevant bill of particulars that added the additional regulations that were at issue in the prior to trial. That was the amended bill? Correct. The the initial bill of particulars didn't make these changes. All right thank you. Thank you. Good morning may it please the court my name is Tom Woods and I represent the facts showed below. It comes from page 18 of their reply brief and they say that Ms. Wynn has asserted that these transactions can be viewed as her using the agents cards to purchase eligible food on their behalf and then repurchasing the food from the undercover agents and with complete respect that is absolutely not supported in the record. You mean there's not sufficient evidence to support that theory? Not even not sufficient evidence it's there's not a scintilla of evidence to support that version of events. I mean the facts here are not complicated. Well but no no but there is this one I remember distinctly this one purchase about you know coming out with a big box of some kind of meat or fish or something like that right? Well let's and I'll address that but let's talk about how these transactions unfolded. Okay. Which is you have an undercover officer with an undercover card meets the defendant either on the street or in front of a store. That card is then taken into the store by the defendant. Most of the times the officer is not allowed in the store. There are a couple of occasions including this one occasion that your honor just referenced in which the officers allowed in the store. That's when the tape was made? Yeah and there was actually the under almost all of these transactions all but one involved a recording device a video recording device. It's just that in most of these times the officer was not allowed in the store. They were directed either to come back later in the day or to wait outside the store. In all those occasions the officer is gives their card and gets back cash about half 50 cents on the dollar. The officer wasn't offered food wasn't asked about food wasn't given food wasn't sold food and most certainly did not resell any food to the defendant. I mean it just simply didn't happen. I mean it's as simple as the card was given cash was given back and that version of events is entirely consistent with what is in the indictment. In paragraph 8 the defendant met people steer them to multiple establishments for the purpose of redeeming their benefits for cash. That's what happened. Paragraph 9 she obtained the cards from individuals took the cards into commercial establishments for the purpose of redeeming benefits for cash. That's what happened. Quick question I don't remember seeing this in the record but were any of the merchants who obviously would have had to facilitate these transactions charged by the government as well as co-conspirators or something of that nature? There was one store owner who is essentially not the subject of any of the charge counts. I understand what I'm trying to understand is what the jury could have inferred in terms of you know what whatever happened in terms of food and so on if you had a cooperative owner it really doesn't matter as long as you got card get back cash. I totally agree and we argued to the jury and I think appropriately so because the evidence supports it that the stores were her co-scammers and and let's break that out there are a number of reasons for that. First is she is on tape at one point telling the undercover officer they're worried referencing the store that you're with the FBI. Okay that tends to show that the store understands there's not quite right about all this. Second she's repeatedly going in to the stores I mean the testimony at trial was first of all we have this state of undercover transactions that span from 2007 to 2010 but there's also testimony that they're observing her going in with other individuals or taking cards from other individuals with a small set of stores. So you've got a small store a few blocks from this courthouse and you've got the same person going in not just day after day hour after hour with different cards of course the store knows something is up. I mean think about how food stamps work you get a card yet a certain amount of benefits every month you can't be coming in repeatedly hour after hour plus she's standing in front of the store soliciting customers. Does the record show that it's the requirement of the store owners to only give merchandise when these cards are used? Yes and it's 278.7 CFR 278.2 which is cited in the indictment cited in paragraph 3 and that says that coupons may be accepted by an authorized retail food store only from eligible households or from their authorized representatives so for example somebody's too elderly they have their son or daughter go to the store and only in exchange for eligible food. And then there's a regulation that that wasn't in the indictment right? 274.10 which was not specifically referenced in the indictment talks about that these eligible that it's the flip side of 278. So 278 talks about what are the obligations on the retailer. 274 talks about all right then what's the flip side what's the obligations on the benefit holder and those talk about 274.10 D that the benefits may only be used by the household or the person household selects to purchase eligible food for the household and of course that's the case right this is an in-kind program this isn't a cash program. Well when you say of course it wasn't so much of course it's a trial because you had expert so what amount of expert testimony out right? Well here's my response to that I was thinking back to my law school days and taking a class from Judge LaValle and I remember him listing ten facts he said the guns in the safe the man started running from the car it was hot outside and at the end he said what's the most important fact I just said of course law students not knowing better we venture guesses it's the gun it's the fact he's running away and he said you're all wrong because I haven't identified what the issue is that's what makes those facts important and so here you got to think about those 12 people in the box they're about to see undercover video after undercover video talking about these transactions for them to appreciate the significance what they need to focus on as being relevant and important they have to have some basic framework for how the program works why is it we're showing this it matters that you can't get cash for your benefits it matters this is what puts in the context all her otherwise very suspicious behavior asking the officer whether she's a police whether he's a police officer the fact that all this is done outside primarily and you have to come back later in the day the fact that what's the significance of and there's a little bit of evidence that you know she walked in the defendant walked out of the store with food what's the significance of that evidence I would say none and I'd say none because was that your was that your argument to the jury that you know it's irrelevant yes yes and it is irrelevant because this scheme first of all let's break that into two points first it's flatly illegal I mean there really can't be a debate about that if you look at two seventy eight point two and two seven well but illegal though is not the same thing as a crime charge in the indictment you anticipated my second point because that was first is it's illegal but second it is what's charged in the indictment because again this is not a situation and with the stores are unwittingly giving food to somebody thinking that this is otherwise a transaction this is something the stores understand perfectly well or at least that's the evidence now in this appellate posture that the court should view it as and certainly how the jury viewed it as that this is the stores understanding this is a scheme of benefits for cash that's what it is that's why she's standing there that's why another example why the stores understand what's going on there was one video in which actually the undercover had to wait wait because the defendant is there with two other individuals facilitating an illegal transaction stores understand perfectly well what's going on here I gather that the government's position on Sullivan is that even if there was testimony about a legal conclusion that it's harmless error given the vast amount of other information that was there and that and courts instruction absolutely your honor absolutely and I will also say that I did the directive mr. Sullivan and I was very careful not to elicit anything about regulations it's careful not to elicit anything about the defendant particular to herself we called mr. Sullivan because he had no involvement in the investigation the only reference to regulations came when mr. black cross-examined him and brought out and elicited the fact that what he just talked about for 20 minutes come came from the regulations but he didn't opine our guilt or innocence he didn't talk about anything specific to the defendant all he did was to give the jury some framework some basic framework he was the first witness in the trial to understand what was happening does it matter legally that opposing counsel was the one who elicited the testimony I'm no I would say it's invited error at that okay okay what's the panel's any further questions I think you're out of time but if you like I'm in this for a bottle you can have it you don't have to I would just like to emphasize that the record does not show that ms. Wynn and anybody from the stores were co-schemers there's no evidence that they had we she walks in she walks out with fistfuls of cash she does it repeatedly it's the same stores I don't know I think the jury would have to be really stupid to infer anything else I what there's no there was no testimony from any from anybody from the stores there's lots of stuff you're a criminal defense lawyer right you know how these things go and there's lots of stuff that people don't come out and blab about and don't don't testify to the jury's perfectly well infer all the time I mean people don't say gee I had malice of forethought I you know I tend to kill they don't do any of that stuff and the juries regularly find stuff that's not testified to why is this a fair inference from the from the evidence presented here that this was a scheme in which your client and the stores participated in a regular basis because there's no direct evidence of that and I understand obviously that the jury can draw inferences but the complete lack of any sort of agreement any sort of payment records there's there is nothing showing a path from the store to Ms. Wynn of money and she comes out with cash I mean if you know I don't know if she doesn't come out holding groceries she comes out she hands over cash she does it again and again and again and again and again and that's she has cash there is no evidence that it comes from the stores what what there is is evidence that she gets food from the stores I think I think maybe the chief is referring to what we call circumstantial evidence I mean you don't have to have testimony about a lot of things right you can infer it from the circumstances of course your honor but yeah I can say there's no circumstantial evidence that supports that conclusion but if the jury made such a conclusion are you where are you I'm saying that there's insufficient evidence to prove it beyond a reasonable doubt okay that that that that she was a co-schemer which which is one of the the elements thank you thank you here's just argue will stand submitted when next year the argument the last case
judges: Kozinski, Tashima, Smith